# EXHIBIT "A"



COPY

OCT 1 0 2019

CLERK OF THE SUPERIOR COURT
S. MONTUORI
DEPUTY CLERK

| | |
|---|---|
| 1 | JAN-GEORG ROESCH, ESQ. |
| 2 | State Bar No. 018131 |
| | **SARKISOV & ROESCH, PLLC** |
| 3 | 16042 N.32 Street, Suite C5 |
| | Phoenix, Arizona 85032 |
| 4 | Telephone (602) 692-5616 |
| 5 | Fax: (602) 926-2200 |
| | E-mail: Jan@srlawpllc.com |
| 6 | Attorneys for Plaintiff |

7

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8

### IN AND FOR THE COUNTY OF MARICOPA

9

| | |
|---|---|
| 10 | LESLIE BUSTAMANTE, an individual |
| 11 | Plaintiffs, |
| 12 | |
| 13 | vs. |
| | NORDSTROM, INC. a foreign |
| 14 | corporation; LAST CHANCE, a division |
| | of NORDSTROM, INC., a foreign |
| 15 | corporation; JOHN DOES I-V; JANE |
| | DOES I-V; BLACK PARTNERSHIPS I- |
| 16 | V; AND WHITE CORPORATIONS I-V, |
| 17 | |
| | Defendants. |

Case No.:  CV2019-054645

**C O M P L A I N T**
**(Tort, Non-Motor Vehicle)**

18

19    Plaintiff Leslie Bustamante ("Plaintiff") by and through her counsel undersigned,

20    allege as follows:

21        1.    At all times material hereto, Plaintiff resides in Maricopa County,

22    Arizona.

23        2.    At all times material hereto, Defendant Nordstrom, Inc. is a foreign

24    corporation conducting business in Arizona. Defendant Last Chance is a division of

25    Nordstrom, Inc. and conducts business in the State of Arizona. The Last Chance store is

26

1

located at 1919 E. Camelback Road, Phoenix, Arizona 85016.  Collectively, Nordstrom, Inc., and Last Chance are referred to hereinafter as ("Defendants").

4.     The names of John Does I-V, Jane Does I-V, Black Partnerships I-V, and White Corporations I-V are unknown to Plaintiffs, but upon ascertaining their names, Plaintiffs will ask leave of the Court to insert their true names in lieu of the fictitious names herein sued upon.

5.     Defendants have caused acts out of which this lawsuit arose to occur in Maricopa County, Arizona.  The amount in controversy exceeds the Court's minimum jurisdictional amount.

6.     On October 14, 2017, at approximately 4:00 p.m., Plaintiff, was shopping for clothing and apparel at Nordstrom's Last Chance, in Phoenix, Arizona. Last Chance is Nordstrom's final-clearance store for returned and overstocked merchandise from Nordstrom stores, Nordstrom Rack and Nordstrom.com.  It was Nordstrom's policy at Last Chance that all sales were final, and that Nordstrom would not honor any returns.

7.     While on Defendants' premises, Plaintiff was attempting to try on a pair of shoes that were on display and being sold by Defendants.  The shoes were tied together with a zip-tie which could not be removed and prevented the shoes from being separated. There were no signs posted anywhere throughout Defendants' store that customers could remove the zip tie before attempting to try on the shoe.  Moreover, there were no sales representatives immediately available to inquire about having the zip tie removed to allow the shoes to be separated.  There were no signs posted

anywhere throughout the store warning its customers of the potential tripping hazard involving the zip ties when attempting to try on the shoes.

8.    As all purchases were final, Plaintiff intended to try on the shoes to see whether the she would fit and evaluate their esthetic appearance.  Plaintiff put on the matching shoe for her right foot and attempted to view the shoe in the mirror which was provided by Last Chance. Plaintiff was able to take several steps toward the mirror when the other shoe caught on Plaintiff's left foot causing Plaintiff to trip and fall.  As a result of the fall, Plaintiff sustained severe injuries to her right upper extremity.  While on Defendant's premises, Plaintiff was informed by two employees of Nordstrom's Last Chance that in the recent past several customers who had visited their store had tripped when attempting to try on shoes while the zip ties were still attached and securing the other shoe.

## (NEGLIGENCE AGAINST NORDSTROM, INC AND LAST CHANCE)

9.    Plaintiff repeats and reallege the allegations contained in paragraphs 1-8 as though fully set forth herein and incorporate the same by this reference.

10.    Defendants owe a duty to their invitees, including Plaintiff, to exercise reasonable care to keep its premises safe and to disclose dangerous conditions of which Defendants knew or should have known. It was foreseeable to Defendants that its customers would try on its merchandise, including its shoes that were tied together with zip ties, especially as all sales were final.

11.     Defendants have knowledge of the unreasonably dangerous condition as Defendants created the condition by using zip ties to secure the shoes that are in its Last Chance store.  Furthermore, Defendants were also aware that the use of zip ties to keep its shoes secured, created an unreasonably dangerous condition as previous customers shopping at Last Chance store had tripped because of the use of the zip ties.

12.     Despite having knowledge of the unreasonably dangerous condition, Defendant failed to warn its customers, including Plaintiff, of the unreasonably dangerous condition the zip ties posed when attempting to try on shoes.  Furthermore, Defendants failed to provide its customers with means necessary to remove the zip-ties or otherwise give notice to its customers, including Plaintiff, that they should remove the zip-ties before trying on the shoes.

13.     While Plaintiff denies that the unreasonably dangerous condition was known to her, Defendants also owe a duty to warn Plaintiff of any condition that is considered open or obvious, as Defendant should have anticipated that the dangerous condition would cause physical harm to Plaintiff when attempting to try on the shoes. Defendant failed to warn Plaintiff of the unreasonably dangerous condition that caused serious physical harm to Plaintiff.

14.     Moreover, Defendant failed to take reasonable measures to keep its customers safe by using alternative methods to tie its shoes.  In addition to using zip ties, Nordstrom also utilized rubber bands to secure its shoes. The rubber bands were removable to allow customers to separate them and try on shoes unencumbered.

15.     Defendants breached their duty of reasonable care to Plaintiff and other invitees by failing to place Plaintiff and other invitees on notice of the unreasonable dangerous condition posed by the zip ties used to secure the shoes.  Furthermore, Defendants breached their duty of care by failing to notify customers that they should remove the zip-ties before attempting to try on the foot ware and make available the means to remove the zip-ties. Moreover, Defendants breached their duty of care to Plaintiff and other invitees by imposing a no-return policy for shoes that are zip-tied and thereby requiring Plaintiff and other invitees to try on shoes at the store that are zip-tied, which inherently is an unreasonably dangerous condition.

16.     As the direct result of the negligence of Defendants, Plaintiff sustained injuries which have caused Plaintiff pain, suffering, mental and emotional anguish and a general decrease in the quality of life.  At this time Plaintiff does not know whether any of said injuries are permanent and, if so, the extent of the permanency.  Plaintiff believes and, therefore, alleges that said injuries may have a permanent, residual effect.

17.     As a further result of the negligence of Defendants, Plaintiff has incurred expenses for hospital treatment, medical expenses, physicians, pharmaceuticals, physical therapy and other expenses, and may continue to incur such expenses in the future.

18.     As a further result of the negligence of Defendants, Plaintiff lost time from work.

WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:

(1)    For general and compensatory damages in an amount to be proven at trial;

(2)    For special damages for medical and other expenses which have been incurred and will be incurred in the future;

(3)    For Prejudgment Interest on liquidated damages;

(3)    For Plaintiffs' costs herein; and

(4)    For such other relief as the Court deems proper.

## DISCOVERY TIER

19.    Pursuant to Arizona Rules of Civil Procedure, Rule 26.2(c)(3), the Court should assign this case to the following tier based on the amount of damages requested: Tier 2 = Actions claiming damages greater than $50,000.00 and less than $300,000 in damages.

## JURY DEMAND

20.    In the event trial of this matter becomes necessary, Plaintiff requests a trial by jury.

DATED this _10TH_ day of October 2019.

SARKISOV & ROESCH, PLLC

Jan-Georg Roesch, Esq.
16042 North 32nd Street, C-5
Phoenix, Arizona 85032
Attorneys for Plaintiff

# EXHIBIT "B"

**ARIZONA**
Mailing Address:
P.O. Box 31040
Phoenix, AZ 85046

Physical Address:
16042 N. 32nd Street
Suite C-5
Phoenix, AZ 85032
Phone: (602) 428-5004
Fax: (602) 926-2200

**TEXAS**
10865 Shaenfield Road
Suite 1103
San Antonio, TX 78254
Phone: (210) 444-9221
Fax: (210) 634-2286



SARKISOV & ROESCH

George V. Sarkisov, Esq.
Direct line: (602) 363-7948
Email: George@srlawpllc.com

*Jan-Georg Roesch, Esq.
Direct line: (602) 692-5616
Email: Jan@srlawpllc.com
* licensed in Arizona & Texas

Lawrence P. Nicholls, Esq.
of counsel
Direct line: (602) 300-7318
Email: Lawnich@aol.com

November 5, 2018

**Sent via e-mail:** Patrick.P.Laborde@nordstrom.com
Patrick Laborde
Nordstrom Corporate Office
P.O. Box 21865
Seattle, Washington 981111

| Re: | Our Client: | **Leslie Bustamante** |
|---|---|---|
| | DOI: | **10/14/17** |
| | Claim Number: | **GC1707706154** |

Dear Mr. Laborde:

Leslie Bustamante has been released from active care; accordingly, we are now in a position to commence negotiations to resolve Ms. Bustamante's injury claim with Nordstrom.

**A. Liability**

On October 14, 2017, Leslie Bustamante visited Nordstrom's Last Chance Store, located at 1919 East Camelback Road, in Phoenix Arizona to purchase shoes. This was Ms. Bustamante's first visit to the store. She walked through the crowded aisles to locate the women's shoe department, where she perused the selection of available footwear. After some time passed, Ms. Bustamante located a pair of boots that she desired to purchase. As the Store's policy precluded returns after purchase, Ms. Bustamante wanted to ensure that the boots would fit prior to purchase. Nordstrom encouraged its customers to try on the shoes as the store made available seating benches and mirrors in the shoe department. The pair of boots were fastened together with zip-ties which could not be readily removed. Nordstrom posted no signs that its customers should inquire with staff to request removal of the ties or that customers were permitted to do the same. Ms. Bustamante was left with understanding that the zip-ties were not to be removed.

Nordstrom
Leslie Bustamante
Claim # GC1707706154
November 5, 2018
Page 2

With the boots remaining zip-tied, Ms. Bustamante proceeded to try on the right boot. She sat on one of the available benches to remove her shoe and put on the boot on her right foot. To ensure a proper fit when wait-bearing and reassure herself of the aesthetic appearance, Ms. Bustamante stood up to take a couple of steps forward to allow her to view the boot in the mirror, which was located underneath the bench. As she attempted to do so, the left boot caught itself on Ms. Bustamante's left foot, causing her trip and fall forwards, losing her balance. To prevent her head from striking the ground or any object around her, Ms. Bustamante straightened out both arms. However, as Ms. Bustamante lost her balance, she fell towards her right side and landed hard on her right palm and arm.

Upon impact, Ms. Bustamante felt and heard a bone crack in her right arm. Within seconds, she experienced excruciating pain in her right elbow joint which radiated down her right arm. Store attendants came over to assist Ms. Bustamante. Her right arm started to swell and there was evidence of bruising around the elbow joint. The resulting fall was observed and heard by shoppers and store attendants. Attendants rushed to obtain ice packs and offered to call an ambulance, which Ms. Bustamante declined. She contacted her sister, Audrey Bustamante, who lived within a short distance to the store to pick her up and take her to the Emergency Room. Upon arrival, Audrey Bustamante noticed her sister sitting in a chair in excruciating pain. The bruising and swelling of Leslie's right forearm and elbow was very noticeable. After completing an incident report, Leslie was rushed to the Emergency Room.

Nordstrom has a non-delegable duty to its invitees to ensure that its premises are safe and to warn its customers of unreasonably dangerous conditions of which it knew or should have been aware. Nordstrom knew, or should have known, that the zip-ties created an unreasonably dangerous condition for its customers when trying on their shoes. Nordstrom provided no means to its customers, including Leslie Bustamante, to allow for the removal of the Zip-tie. Nordstrom's shop attendants admitted to both Audrey and Leslie that in the past, several other customers had tripped or had near tripping incidences when attempting to try on shoes that were held together with zip-ties. Despite this knowledge, Nordstrom did nothing to warn its customers of the dangers related to the zip-ties and failed to notify its customers that they should seek assistance to remove the ties before trying on their shoes.

Moreover, despite having knowledge that the use of zip-ties created an unreasonably dangerous condition, Nordstrom continued to use the zip-ties to fasten its merchandise without warning its customers of the dangerous condition. At the time of the incident Nordstrom did use alternative means to secure its merchandise, including the use of rubber band, which was easily removable by the customer. In failing to warn invitees of the known danger, Nordstrom breached its duty of care to Leslie Bustamante. Nordstrom cannot claim that it did not have knowledge of the dangerous condition, as Nordstrom was responsible for selecting zip-ties in securing the merchandise that could not be readily removed by the customer and thereby creating a tripping hazard when attempting to try on the merchandise. More importantly, as Nordstrom not only had knowledge

Nordstrom
Leslie Bustamante
Claim # GC1707706154
November 5, 2018
Page 3

that the zip-ties created a dangerous condition but continued to use the zip-ties without warning its customers and permitting its removal prior to trying on the footwear, Nordstrom's recklessly disregarded the safety of its customers, including the safety of Leslie Bustamante.

## B. Injuries/Medical Treatment

Ms. Bustamante was taken to the Emergency Room at Banner University Medical Center, at McDowell and 11th Street. At the time of arrival, her symptoms had escalated. Physical examination revealed spams of the brachioradialis muscle, generalized swelling around the elbow, medial and lateral, with painful range of motion. X-rays taken of the right elbow revealed a fracture of the right distal humerus with separation of fracture fragments and joint effusion. A subsequent CT Scan taken of the right elbow revealed a comminuted supracondylar fracture.

Due to the location and severity of the fracture Ms. Bustamante was subsequently admitted to Banner University Medical Center to undergo surgery. Orthopedic surgeon Clifford Jones, M.D., performed open reduction and internal fixation of the right supracondylar intercondylar distal humeral fracture with 90,90 locking plates, as well as right ulnar nerve neurolysis. She was discharged by Dr. Clifford Jones on October 15, 2017, whereby he placed Ms. Bustamante in a splint, keeping the arm at full extension for a period of two weeks.

Ms. Bustamante returned to Dr. Jones' office for her initial post-surgical follow-up visit on October 26, 2017. She reported ongoing swelling and pain in her right upper extremity. On physical examination Ms. Bustamante was only able to minimally flex and extend her elbow. Ms. Bustamante was ordered no weightbearing on the right upper extremity and consequently was placed on an off-work status.

By November 7, 2017 Ms. Bustamante started with Physical Therapy. Ms. Bustamante reported experiencing right elbow pain ranging from 2/10 to 7/10. She was complaining of radiating pain in her right elbow shooting down to her hand and into the 4th and 5th fingers. She also noted numbness radiating along the ulna side into the 4th and 5th fingers, accompanied by weakness. Her range of motion was limited to 15 degrees of extension to 100 degrees of flexion.

Ms. Bustamante diligently followed with her course of physical therapy and performed all recommended in-home exercises. By January 12, 2018 she was finally able to return to her position as a medical billing specialist and was discharged from physical therapy with instructions to continue with her HEP. At the time of her release from physical therapy, in early April 2018, Ms. Bustamante continued to experience pain in her right elbow which radiates into her 4th and 5th fingers. Ms. Bustamante did regain some sensation in her right arm and fingers but continued to have numbness along the ulnar side of the arm which travels down on the outside of her right hand and into the 4th and 5th fingers. She noted not only deficits in sensation but also overall strength and range of motion in her right elbow and hand. Dr. Jones has recommended that Ms. Bustamante consult with a hand specialist if ulnar nerve neuropathy symptoms persist. Ms.

Nordstrom
Leslie Bustamante
Claim # GC1707706154
November 5, 2018
Page 4

Bustamante did return to see Dr. Jones on October 2, 2018 for a final evaluation. At the time she reported no change in her condition. She continued to experience symptoms of weakness and numbness in her right hand. Dr. Jones discharged her from care. Ms. Bustamante recently engaged Dr. Leonard S. Bodell, a hand specialist, to address her concerns related to the ongoing symptoms.

### C. Damages

Ms. Bustamante incurred the following medical expenses related to the injuries sustained from the fall at Nordstrom's Last Chance Store:

### PRESENT MEDICAL EXPENSES

| | |
|---|---|
| Banner University Medical Center: | $70,777.30 |
| Banner Virtual Radiologic Professionals | 240.00 |
| Ron Shinar M.D. | 21.00 |
| Clifford Barry Jones, M.D. | 5,116.00 |
| Valley Anesthesiologist Consultants, Inc. | 7,135.00 |
| HonorHealth Physical Therapy | 15,015.00 |
| **TOTAL Medical Expenses** | **$ 98,304.30** |

According to Orthopedic Surgeon Leonard Bodell, M.D., Ms. Bustamante sustained not only a permanent injury but also a ratable impairment to her right upper extremity as a result of the fall. Per the AMA Guides to the Evaluation of Permanent Impairment, 6th Edition, she sustained an impairment based on the grid for elbow and humeral fracture (See Table 15-4, page 399). Based on the nature of the fracture, its course of healing, objective findings on examination including reduce range of motion, weakness, as well as shooting pain and numbness and sensation in her lower arm and fingers, her impairment range, at the present, is 3%-4% of the right upper extremity.

Dr. Bodell is of the opinion that Ms. Bustamante will, more likely than not, experience progression of her symptoms and condition, and it is expected that Ms. Bustamante is going to require future medical care to address her residual symptoms of the ulnar nerve. In light of the expected progression of her pain, numbness, and weakness, Ms. Bustamante will likely require undergoing an Ulna Nerve Decompression and Transposition. Removal of the hardware due to irritation and pain is similarly expected and may present itself at an earlier stage and therefore become a separate issue.

Already plagued with at least two future surgeries, Ms. Bustamante is subject to greater risk of a periprosthetic fracture due to osteoporosis. A Periprosthetic fracture occurs through or above the presence of hardware. These types of fractures are caused because of differential zone

Nordstrom
Leslie Bustamante
Claim # GC1707706154
November 5, 2018
Page 5

of elasticity regarding the plate and bone.  Should her condition with respect to the elbow joint deteriorates significantly, she is likely to face additional surgeries including ORIF of the distal humerus or even elbow replacement. The cost of each of the procedures is itemized below:

## FUTURE MEDICAL EXPENSES

### 20680 Hardware removal

| | |
|---|---|
| Surgeon | $ 3,000.00 |
| Facility | 15,000.00 |
| Anesthesiologist | 7,500.00 |
| Therapy | 3,000.00 |
| TOTAL | **$28,500.00** |

### 64718 Ulnar Nerve Transposition

| | |
|---|---|
| Surgeon Fee | $12,500.00 |
| Facility Fee | 15,000.00 |
| Anesthesiologist | 7,500.00 |
| Therapy | 3,000.00 |
| TOTAL | **$38,000.00** |

### 24515 ORIF Distal Humerus

| | |
|---|---|
| Surgeon | $20,000.00 |
| Facility | 15,000.00 |
| Anesthesiologist | 7,500.00 |
| Therapy | 6,500.00 |
| TOTAL | **$48,500.00** |

### 24367 Total Elbow Replacement

| | |
|---|---|
| Surgeon | $25,000,00 |
| Facility | 20,000.00 |
| Anesthesiologist | $7,500.00 |
| Therapy | 7,500.00 |
| TOTAL | **$60,000.00** |

Nordstrom
Leslie Bustamante
Claim # GC1707706154
November 5, 2018
Page 6

## LOST WAGE CLAIM

As Ms. Bustamante was ordered by her treating physician to be non-weightbearing, she was forced to be off work from October 15, 2017 through January 11, 2018 (88 days). At the time of the incident, Ms. Bustamante was working in a full-time capacity as a medical billing specialist earning $21.80/hour. Her daily rate is $124.13. ($21.8x40 hours/30.416 days). As Ms. Bustamante missed a total of 88 days her total lost wages for the time period in questions is **$10,923.44.**

Additionally, Ms. Bustamante is also to be expected to miss additional time from work when undergoing surgery for the Ulna Nerve Transplant and Hardware removal. According to Dr. Bodell, Ms. Bustamante is expected to be off work for a period of no less than 6 weeks. In the event she requires ORIF of the Distal Humerus or Total Elbow Replacement, she would be expected to be off work for at least 4 months. Given those predictions, Ms. Bustamante is expected to have a future wage loss ranging between **$5,213.46 and $15,102.15.**

## ACTIVITIES OF DAILY LIVING

The injuries from which she suffered as a result of the fall are life changing. The impairment rating is reflective of her limitations in the use of her right arm and hand. Ms. Bustamante, who is right hand dominant, is now forced to adjust her daily living activities. Simple things such as personal hygiene, cooking, cleaning, shopping require her to modify the use of her right upper extremity. In some instances, she is limited to using only her left upper extremity. She has weakness in her right arm and hand which diminish her ability to grab larger or heavier objects. Ms. Bustamante has noticed that at times she loses grip and requires the use of both hands. As A result of the limitations associated with the right upper extremity, Ms. Bustamante is overcompensating with her left upper extremity to accomplish ADLs, work, etc. It is anticipated, within a reasonable degree of medical certainty, that Ms. Bustamante will experience symptoms in the left upper extremity due to its overuse.

Prior to the fall, Ms. Bustamante enjoyed recreational activities such as swimming, cycling, and Tennis. In light of her limited movement with the right elbow, she is no longer able to enjoy those recreational activities. She will continue to suffer from her symptoms with no anticipated relief. Future surgeries are certain which are likely only to exacerbate her symptoms and even further diminish her level of functioning with her right hand and arm, which is her dominant hand. As her condition progresses so will her will the extent of her impairment. As noted previously, should her injury result in total elbow joint replacement, Ms. Bustamante's impairment will range between 26% and 34%.

It is evident that the right elbow injury and its severity resulted in a global effect on Ms. Bustamante's well-being now and in the future.

Nordstrom
Leslie Bustamante
Claim # GC1707706154
November 5, 2018
Page 7

### D.      Damages Summary/Demand

|  | Summary of Special and General Damages |  |
|---|---|---|
| Past Medical Expenses | $97,952.30 |  |
| Past Wage Loss | $10,923.44 |  |
|  | Subtotal | $108,112.97 |
| Future Medical Expenses | $66,500 to $175,000 |  |
| Future Wage Loss | $5,213.46 to $15,102.15 |  |
|  | Subtotal | $71,713.46 to $190,102.15 |
| Punitive Damages | $300,000 to $600,000 |  |
|  |  |  |
| General Damages | $250,000 to $300,000 |  |
| **TOTAL DAMAGES** |  | **$729,826.43 to $1,198,215.12** |

Nordstrom's conduct cannot be merely described as negligent. Its continued use of the Zip-ties despite knowledge of the tripping hazard it posed and failing to inform its customers of the known danger when trying on footwear, is evidence of Nordstrom's conscious disregard of its customer's safety. Arizona law seeks to punish such behavior and allows for the award of punitive damages, especially where Nordstrom was aware of the alternative method to secure the footwear in the form of a rubber band and the alternative method of the rubber band was actually more cost efficient than Zip-ties. Any argument by Nordstrom to the contrary would simply lack credibility before the Jury. The egregiousness of Nordstrom's conduct would not preclude a Jury from awarding punitive damages in the range of **$300,000 to $600,000.**

With the expectation that Ms. Bustamante will undergo additional surgeries her total future medical damages range from **$65,500,** which include the hardware removal and the ulnar nerve decompression to **$175,000** which includes the two additional recommended surgeries. It should be noted that these are conservative estimates. Additionally, Ms. Bustamante's wage loss claim for past and future earnings will range between **$15,000 to $25,000**

In addition to the humiliation and embarrassment she had to endure at the time of the horrific fall, Ms. Bustamante suffered excruciating pain due to a complex fracture near her elbow joint. The seriousness of her injury is apparent as she was forced undergo extensive surgery that involved open reduction and internal fixation of the right supracondylar intercondylar distal humeral fracture. Despite strict compliance with her treatment plan, Ms. Bustamante will unfortunately never regain full strength and sensation in her dominant hand. As opined by Dr. Bodell, she will be required to undergo additional surgeries to address the ulna nerve and hardware removal requiring a significant period of recovery and impact the quality of life she enjoyed prior

Nordstrom
Leslie Bustamante
Claim # GC1707706154
November 5, 2018
Page 8

to the fall.  General damages for injuries of the type sustained by Ms. Bustamante range from **$250,000 to 300,000.**

Nordstrom is faced with the potential exposure of $1.1 million dollars in connection with Ms. Bustamante's fall.  In an effort to resolve her claim, Ms. Bustamante has authorized our office to extend a Settlement Demand to Nordstrom in the amount of **$925,000.**   In return, Ms. Bustamante will agree to release all claims against Nordstrom. Please note that the offer is time sensitive and we request a response by no later than November 30, 2018.

Should you have any questions, please give me a call.

Sincerely,

/s/ George V. Sarkisov

George V. Sarkisov

GVS/jr

Enclosure

cc:    Leslie Bustamante (w/o encls.)

# EXHIBIT "C"

**Integrity Attorney Services**
P.O. Box 33123
Phoenix, Arizona 85067-3123

| IAS#: | 80999-ds |
|---|---|
| Atty#: Bustamante/Nordstrom | |

CLERK OF THE
SUPERIOR COURT
FILED
A. RODRIGUEZ, DEP
2019 OCT 16 PH 4: 25

## IN THE SUPERIOR COURT OF THE STATE OF
## ARIZONA IN AND FOR THE COUNTY OF MARICOPA

LESLIE BUSTAMANTE,
    Plaintiff(s),

vs.

NORDSTROM, INC, et al.,
    Defendant(s).

Case No. CV2019-054645

**AFFIDAVIT OF
SERVICE OF PROCESS**

EFRAIN SOTELO, being duly sworn, states: That I am qualified to serve process in this cause, having been so appointed by the court in Maricopa County, Arizona. I received the following documents in this action:

SUMMONS; COMPLAINT; CERTIFICATE OF COMPULSORY ARBITRATION

From SARKISOV & ROESCH, Jan-Georg Roesch, SBN 018131 on 10/11/2019, and in each instance I, personally, served a copy of each document listed above on those named below at the time and place shown, that all services, except where noted, were made within Maricopa County, Arizona.

Upon LAST CHANCE, A DIVISION OF NORSTROM, INC, by service upon its Statutory Agent, CORPORATE CREATIONS NETWORK INC, at 3260 N. Hayden Rd., #210, Scottsdale, Arizona 85251, on 10/14/2019 at 9:49 AM, by leaving one set of the above listed documents with Mea Roland, Accounting and Operations Specialist, who stated she is authorized to accept.

Efrain Sotelo, MC-2045

SUBSCRIBED AND SWORN to me this 14th day of October, 2019.

Notary Public:

Gail R Dammann

My Commission Expires:    August 24, 2022

| | | |
|---|---|---|
| $16.00 | Service(s) | |
| $9.00 | Preparation of Affidavit/Notary | |
| $ 25.00 | Total | |

GAIL R. DAMMANN
Notary Public, State of Arizona
Maricopa County
Commission # 549353
My Commission Expires
August 24, 2022

**Integrity Attorney Services**
P.O. Box 33123
Phoenix, Arizona 85067-3123

| IAS#: | 80998-ds |
|---|---|
| Atty#: Bustamante/Nordstrom | |

CLERK OF THE
SUPERIOR COURT
FILED
A. RODRIGUEZ, DEP
2019 OCT 16 PM 4: 25

## IN THE SUPERIOR COURT OF THE STATE OF
## ARIZONA IN AND FOR THE COUNTY OF MARICOPA

LESLIE BUSTAMANTE,
      Plaintiff(s),

vs.

NORDSTROM, INC, et al.,
      Defendant(s).

Case No. CV2019-054645

**AFFIDAVIT OF
SERVICE OF PROCESS**

EFRAIN SOTELO, being duly sworn, states: That I am qualified to serve process in this cause, having been so appointed by the court in Maricopa County, Arizona. I received the following documents in this action:

SUMMONS; COMPLAINT; CERTIFICATE OF COMPULSORY ARBITRATION

From SARKISOV & ROESCH, Jan-Georg Roesch, SBN 018131 on 10/11/2019, and in each instance I, personally, served a copy of each document listed above on those named below at the time and place shown, that all services, except where noted, were made within Maricopa County, Arizona.

Upon NORDSTROM, INC, by service upon its Statutory Agent, CORPORATE CREATIONS NETWORK INC, at 3260 N. Hayden Rd., #210, Scottsdale, Arizona 85251, on 10/14/2019 at 9:49 AM, by leaving one set of the above listed documents with Mea Roland, Accounting and Operations Speicalist, who stated she is authorized to accept.

Efrain Sotelo, MC-2045

SUBSCRIBED AND SWORN to me this 14th day of October, 2019.

Notary Public:

Gail R Dammann

My Commission Expires:      August 24, 2022

GAIL R. DAMMANN
Notary Public, State of Arizona
Maricopa County
Commission #549353
My Commission Expires
August 24, 2022

| $16.00 | Service(s) |
|---|---|
| $32.50 | Mileage (13)ES |
| $9.00 | Preparation of Affidavit/Notary |
| **$ 57.50** | **Total** |

# EXHIBIT "D"

1  Jan-Georg Roesch, Esq. 018131
2  **SARKISOV & ROESCH**
   16042 North 32nd Street, Suite C-5
3  Phoenix, Arizona 85032
   Telephone (602) 692-5616
4  Fax: (602) 926-2200
   Email: Jan@srlawpllc.com
5  Attorneys for Plaintiff
6

7              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8              **IN AND FOR THE COUNTY OF MARICOPA**

9

10 | LESLIE BUSTAMANTE, an individual      | Case No.: CV2019-054645
11 |                    Plaintiffs,        | **S U M M O N S**
   | vs.                                   |
12 | NORDSTROM, INC. a foreign             | *If you would like legal advice from a lawyer,*
13 | corporation; LAST CHANCE, a division  | *contact the Lawyer Referral Service at*
   | of NORDSTROM, INC., a foreign         | *602-257-4434*
14 | corporation; JOHN DOES I-V; JANE      | *or*
   | DOES I-V; BLACK PARTNERSHIPS I-       | *www.maricopalawyers.org*
15 | V; AND WHITE CORPORATIONS I-V,        | *Sponsored by the*
16 | ,                                     | *Maricopa County Bar Association*
17 |                    Defendants.        |

18

19         **THE STATE OF ARIZONA TO THE DEFENDANTS:**

20      NORDSTROM, INC.
21      LAST CHANCE, a division of NORSTROM, INC.
        John Doe and Jane DOE
22      Joh Does and Jane Does I-V
        Black Corporations I-V
23      White Partnerships I-V

24
           A lawsuit has been filed against you. A copy of the lawsuit and other court
25
   papers are served on you with this "Summons".
26

                                      1

1    **YOU ARE HEREBY SUMMONED** and required to appear and defend, within
2    the time applicable, in this action in this Court. If served within Arizona, you shall
3
4    appear and defend within 20 days after the service of the Summons and Complaint upon
5    you, exclusive of the day of service. If served out of the State of Arizona, whether by
6    direct service, by registered or certified mail, or by publication, you shall appear and
7
8    defend within 30 days after the service of the Summons and Complaint upon you is
9    complete, exclusive of the date of service. Where process is served upon the Arizona
10   Director of Insurance as an insurer's attorney to receive service of process against it in
11   this state, the insurer shall not be required to appear, answer or plead until the expiration
12
13   of 40 days after day of such service upon the Director. Service by registered or certified
14   mail without the State of Arizona is complete 30 days after the date of filing the receipt
15   and affidavit of service with the Court. Service by publication is complete 30 days after
16   the date of first publication. Direct service is complete when made. Service upon the
17
18   Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of
19   Compliance and return receipt of Officer's Return. RCP 4; Arizona Revised Statutes,
20   Section 20-222, 28-502, 28-503.

21   **YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and
22   defend within the time applicable, judgment by default may be rendered against you for
23   the relief demanded in the Complaint.
24
25   **YOU ARE CAUTIONED** that in order to appear and defend, you must file an
26   Answer or proper response in writing with the Clerk of this Court, accompanied by the

2

1   necessary filing fee, within the time required and you are required to serve a copy of

2   any Answer or response upon the Plaintiff's attorney; RCP 10(d); Arizona Revised

3   Statutes, Section 12-311; RCP 5.

4

5          The name and address of the Plaintiff's attorney is:

6          Jan-Georg Roesch, Esq.
           **SARKISOV & ROESCH, P.L.L.C.**
7          16042 North 32nd Street, Suite C5
           Phoenix, Arizona 85032
8          (602) 692-5616
           Jan@srlawpllc.com
9

10          **REQUESTS   FOR   REASONABLE**   accommodation   for   persons   with

11  disabilities must be made to the division assigned to the case by the party needing

12  accommodation or his/her counsel at least three (3) judicial days in advance of a

13

14  scheduled proceeding.

15          **REQUESTS FOR AN INTEREPRETER** for persons with limited English

16  proficiency must be made to the division assigned to the case by the party needing the

17

18  interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance

19  of a scheduled court proceeding.

20  **SIGNED AND SEALED** this date:

    COPY

21

22                                          OCT 1 0 2019



    CLERK OF THE SUPERIOR COURT
    JEFF FINE, CLERK OF THE SUPERIOR COURT
    DEPUTY CLERK

23

24

25  _____
    DEPUTY CLERK

26

# EXHIBIT "E"

In the Superior Court of the State of Arizona
In and For the County of

c    **CV2019-054645**

**CIVIL COVER SHEET- NEW FILING ONLY**
(Please Type or Print)

Plaintiff's Attorney  _IAN-GEORG Robsch_

Attorney Bar Number  _018131_

Is Interpreter Needed? ☐ Yes ☒ No

If yes, what language(s):

CLERK OF THE
SUPERIOR COURT
FILED
S. MONTOYA DEP
19 OCT 10  PM 3: 04

---

Plaintiff's Name(s):  (List all)        Plaintiff's Address:              Phone #:          Email Address:

_LESLIE BUSTAMANTE  c/o SARKISOV & Robsch PLC_

(List additional Plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s):  (List All)

_NORDSTROM, INC_
_LAST CHANCE, A DIVISION OF NORDSTROM, INC_

(List additional Defendants on page two and/or attach a separate sheet)

## RULE 26.2 DISCOVERY TIER OR MONETARY RELIEF CLAIMED:

**IMPORTANT:** Any case category that has an asterisk (*) MUST have a dollar amount claimed
or Tier selected. State the monetary amount in controversy or place an "X" next to the discovery tier
to which the pleadings allege the case would belong under Rule 26.2.

☑ Amount Claimed $ _300,000_      ☐ Tier 1    ☑ Tier 2    ☐ Tier 3

## NATURE OF ACTION

Place an "X" next to the **one** case category that most accurately describes your primary case. Any
case category that has an asterisk (*) MUST have a dollar amount claimed or Tier selected as
indicated above.

## 100 TORT MOTOR VEHICLE:

☒ 101 Non-Death/Personal Injury*

☐ 102 Property Damage*
☐ 103 Wrongful Death*

©Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED                    Page 1 of 3                    CV10f – 010119

Case No._____

## 110 TORT NON-MOTOR VEHICLE:

☑ 111 Negligence*
☐ 112 Product Liability – Asbestos*
☐ 112 Product Liability – Tobacco*
☐ 112 Product Liability – Toxic/Other*
☐ 113 Intentional Tort*
☐ 114 Property Damage*
☐ 115 Legal Malpractice*
☐ 115 Malpractice – Other professional*
☑ 117 Premises Liability*
☐ 118 Standard-libel/Defamation*
☐ 116 Other (Specify) _____.

## 120 MEDICAL MALPRACTICE:

☐ 121 Physician M.D.*          ☐ 123 Hospital*
☐ 122 Physician D.O*          ☐ 124 Other*

## 130 & 197 CONTRACTS:

☐ 131 Account (Open or Stated)*
☐ 132 Promissory Note*
☐ 133 Foreclosure*
☐ 138 Buyer-Plaintiff*
☐ 139 Fraud*
☐ 134 Other Contract (i.e. Breach of Contract)*
☐ 135 Excess Proceeds-Sale*
☐ Construction Defects (Residential/Commercial)*
  ☐ 136 Six to Nineteen Structures*
  ☐ 137 Twenty or More Structures*
☐ 197 Credit Card Debt (Maricopa County Only)*

## 150-199 OTHER CIVIL CASE TYPES:

☐ 156 Eminent Domain/Condemnation*
☐ 151 Eviction Actions (Forcible and Special Detainers)*
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment

☐ 158 Quiet Title*
☐ 160 Forfeiture*
☐ 175 Election Challenge
☐ 179 NCC-Employer Sanction Action (A.R.S. §23-212)
☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream Adjudication)*
☐ 187 Real Property *
☐ Special Action against Lower Courts
      (See Lower Court Appeal cover sheet in Maricopa)
☐ 194 Immigration Enforcement Challenge
      (A.R.S. §§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

☐ Administrative Review
      (See Lower Court Appeal cover sheet in Maricopa)
☐ 150 Tax Appeal
      (All other tax matters must be filed in the AZ Tax
      Court)
☐ 155 Declaratory Judgment
☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute – Other*
☐ 190 Declaration of Factual Innocence (A.R.S. §12-771)
☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S. §46-451)*
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction
☐ 172 Secure Attendance of Prisoner
☐ 173 Assurance of Discontinuance
☐ 174 In-State Deposition for Foreign Jurisdiction
☐ 176 Eminent Domain– Light Rail Only*
☐ 177 Interpleader– Automobile Only*
☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐ 183 Employment Dispute- Discrimination*

Case No._____

☐ 185 Employment Dispute-Other*
☐ 196 Verified Rule 45.2 Petition
☐ 195(a) Amendment of Marriage License
☐ 195(b) Amendment of Birth Certificate

☐ 163 Other*

_____
(Specify)

## EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order   ☐ Provisional Remedy   ☐ OSC   ☐ Election Challenge

☐ Employer Sanction   ☐ Other (Specify) _____

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the Commercial Court under Rule 8.1, and Plaintiff requests assignment of this case to the Commercial Court. More information on the Commercial Court, including the most recent forms, are available on the Court's website at:

https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

_____

_____

**Additional Defendant(s):**

_____

_____

# EXHIBIT "F"





OCT 1 0 2019

CLERK OF THE SUPERIOR COURT
S. MONTUORI
DEPUTY CLERK

1  Jan-Georg Roesch, Esq. 018131
2  **SARKISOV & ROESCH**
   16042 North 32nd Street, Suite C-5
3  Phoenix, Arizona 85032
   Telephone (602) 692-5616
4  Fax: (602) 926-2200
5  Email: Jan@srlawpllc.com
   Attorneys for Plaintiff
6

7            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8                IN AND FOR THE COUNTY OF MARICOPA

9   LESLIE BUSTAMANTE, an individual     Case No.:   CV2019-054645

10                      Plaintiffs,

11            vs.                          **CERTIFICATE OF COMPULSORY**
    NORDSTROM, INC. a foreign             **ARBITRATION**
12  corporation; LAST CHANCE, a division
    of NORDSTROM, INC., a foreign
13  corporation; JOHN DOES I-V; JANE
14  DOES I-V; BLACK PARTNERSHIPS I-
    V; AND WHITE CORPORATIONS I-V,
15
16                      Defendants.

17

18        The undersigned certifies that the largest award sought by the Plaintiff, including

19  punitive damages, but excluding interest, attorneys' fees, and costs exceeds limits set by

20  Local Rule for compulsory arbitration. This case IS NOT subject to compulsory

21  arbitration as provided in Rules 72 through 77 of the Arizona Rules of Civil Procedure.

22

23

24

25

26

                                        1

1  DATED this _____ day of October 2019.

2

3                         SARKISOV & ROESCH, PLLC

4

5                         Jan-Georg Roesch, Esq.

6                         16042 North 32nd Street, C-5
                          Phoenix, Arizona 85032
7                         Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                              2